UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CORAVIN, INC.                                    :
28 Crosby Drive, Suite 100                       :
Bedford, Massachusetts 01730,                    :
        Plaintiff,                            :
    v.                                          :
                                                :   COMPLAINT FOR DAMAGES,
JI "JASON" CHENG                                 :   INJUNCTIVE AND OTHER RELIEF
2317 Sterling Blvd.                              :   FOR VIOLATIONS OF 15 U.S.C.
Englewood, NJ  07631-4829                        :   § 1114; 15 U.S.C. § 1125(a); AND
                                                :   RELATED CLAIMS; AND JURY
        And,                                  :   DEMAND
JOHN DOES 1-100, individually or as              :
corporate/business entities,                     :
        Defendants.                           :
_____                  :

      Plaintiff Coravin, Inc. ("Coravin") brings this action against Defendant Ji "Jason" Cheng ("Cheng") and John Does 1-100 ("Doe Defendants") (collectively, "Defendants") for trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114; false advertising in violation of 15 U.S.C. § 1125(a)(1)(B); unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A); common law trademark infringement; unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A; and tortious interference with contract and business relations, and alleges as follows. These claims arise from Defendants' misappropriation of Coravin's trademarks in conjunction with Defendants' unlawful and unauthorized sale of Coravin products on the Internet, including the sale of materially different and non-genuine products bearing Coravin's trademarks that are not subject to, do not abide by, and interfere with Coravin's quality controls.

## PARTIES

      1.    Coravin is a Delaware corporation, which has its principal place of business at 28 Crosby Drive, Suite 100, Bedford, Massachusetts 01730.

2.      Upon information and belief, Defendant Cheng resides in Englewood, NJ, and operates a storefront called "ROMANS828" on www.amazon.com ("Amazon"), which was formerly called "AMZTECH" (the "Storefront").

3.      Upon information and belief, Defendants also use a 218 S. Van Brunt Street, Englewood, NJ address to operate the Storefront and deliver materially different and non-genuine products bearing Coravin's trademarks from that address to consumers.

4.      The true names, involvement, and capacities, whether individual, corporate, associated or otherwise, of Defendants John Does 1-100 are unknown to Coravin.  Therefore, Coravin sues these Defendants by a fictitious name.  Coravin is informed and believes, and on that basis alleges, that the John Doe Defendants sued herein are equally responsible for the events and occurrences referred to herein or otherwise interested in the outcome of the dispute.  When the true names, involvement, and capacities of these parties are ascertained, Coravin will seek leave to amend this Complaint accordingly.

## **JURISDICTION**

5.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338 for Coravin's claims that arise under federal law and 28 U.S.C. § 1367 for Coravin's claims that arise under state law because they form part of the same case or controversy under Article III of the United States Constitution.

6.      This Court has personal jurisdiction because Defendants have expressly aimed tortious activities toward the State of Massachusetts and established sufficient minimum contacts with Massachusetts by, among other things, advertising and selling infringing Coravin products to consumers within Massachusetts through one or more highly interactive commercial websites with the knowledge that Coravin is located in Massachusetts and is harmed in Massachusetts as a result of Defendants' sales of infringing Coravin products to Massachusetts residents.  Defendants have known that Coravin is located in Massachusetts, among other reasons, because they have received

cease-and-desist letters from Coravin.  Coravin's claims arise out of Defendants' sales of infringing Coravin products to Massachusetts residents.

7.      Defendants have created an interactive storefront on Amazon called "ROMANS828," which was formerly known as "AMZTECH."   Through this interactive storefront, Defendants actively advertise, market, sell, ship, and distribute infringing products bearing Coravin's trademarks in Massachusetts and to Massachusetts residents.   Defendants continue to engage in these actions despite being put on notice of their illegal conduct and the impendency of this action.

8.      Defendants' activities in Massachusetts have been significant and they have made substantial and regular sales of infringing products bearing Coravin's trademarks to Massachusetts residents.  Defendants have sold, and continue to regularly sell, additional infringing products bearing Coravin's trademarks into Massachusetts and to Massachusetts residents.

## VENUE

9.      Venue is proper in this judicial district pursuant to 28 U.S.C.§ 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district or, in the alternative, because a Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS
### Coravin and Its Trademarks

10.      Established in 2011, Coravin is a global wine technology company.  Its products include wine accessories and award-winning preservation systems that enable the pouring of wine without removing the cork and protect the remaining wine from oxidation ("Coravin Products").

11.      Coravin's unique wine preservation system is a highly technical precision instrument, utilized by not only home connoisseurs, but also restaurants and wine bars, wineries, and wine stores, and has been hailed as changing the way the world drinks wine.

12.     Coravin's wine preservation system works, in part, by using Coravin's high pressure gas capsules.  These gas capsules contain Argon gas, which need to be handled with care. The use of non-genuine capsules, including large capacity gas sources, can result in gas leaks which could cause serious injury or death.

13.     Coravin devotes a significant amount of time, energy, and resources toward protecting the value of the Coravin brand, products, name, and reputation.  Notably, Coravin sells Coravin Products exclusively through a network of authorized resellers ("Authorized Resellers"). By distributing Coravin Products exclusively through Authorized Resellers, Coravin ensures that users of its products receive the high-quality products that they expect from Coravin and that they receive the full suite of customer support services that accompany genuine Coravin Products.  In the highly competitive wine products industry, quality and customer support are fundamental to a customer's decision to purchase a product.

14.     To promote and protect the Coravin brand, Coravin has registered numerous trademarks with the United States Patent and Trademark Office, including but not limited to: CORAVIN® (U.S. Reg. Nos. 4,568,810 and 4,577,185); THE LAST GLASS IS JUST AS AMAZING AS THE VERY FIRST™; PIVOT™; CORAVIN PURE™; and CORAVIN MOMENTS™.

15.     The registrations for the Coravin Trademarks are valid, subsisting, and in full force and effect.  Pursuant to 15 U.S.C. § 1065, the Coravin Trademarks serve as conclusive evidence of Coravin's ownership of the marks and of Coravin's exclusive right to use and direct the use of the marks in commerce and in connection with the sale and distribution of Coravin Products identified in the registrations, as provided by 15 U.S.C. § 1115(b).

16.     Coravin actively uses and markets the Coravin Trademarks in interstate commerce.

17.     Consumers recognize the Coravin name for its affiliation with wine products and its innovation.

18.     The Coravin name, brand, and image is well-recognized by consumers throughout the United States for its wine products.

19.     Due to the superior quality and exclusive distribution of Coravin Products, and because Coravin is uniquely recognized as the source of these high-quality products, the Coravin Trademarks have considerable value.  Coravin is recognized as the source of products bearing the Coravin Trademarks.

### Online Marketplaces and the Challenges They Present to Coravin Product Quality

20.     E-commerce retail sales have exploded over the past decade.  From Q3 2009 to Q3 2019, the percentage of total retail sales in the United States that were completed through e-commerce channels rose from 4.1% to 11.2%.  *See* Federal Reserve Bank of St. Louis, *E-Commerce Retail Sales as a Percent of Total Sales* (November 19, 2019), https://fred.stlouisfed.org/series/ECOMPCTSA.

21.     In 2018, consumers spent over $500 billion online with U.S. merchants, up more than 15% from the year before.  *See* Digital Commerce 360, *U.S. ecommerce sales grow 15.0% in 2018* (Feb. 28, 2019), https://www.digitalcommerce360.com/article/us-ecommerce-sales/.  This massive growth is being driven largely by the growth of online marketplaces.  Amazon alone accounts for 40% of online retail, or over $200 billion in sales per year.

22.     While the online marketplaces have created a great deal of opportunity, they also greatly challenge a manufacturer's ability to control the quality of its products.

23.     For example, many online marketplaces including Amazon, also allow third parties to sell products anonymously, *i.e.*, without disclosing their actual identity or sources to consumers.  As such, any person or entity that is able to obtain a manufacturer's products through unauthorized diversion can sell them on the online marketplaces without having to reveal its identity to the consuming public.  This anonymity effectively prevents the manufacturer and consumer from being able to reach sellers like Defendants and address quality concerns.

24.    It is common for these unauthorized sellers to sell diverted and degraded products to unwitting consumers.  *See* CNBC, *Greed Report:  Your quest for savings could land you in the 'gray market'* (Sep. 8, 2016),  https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html.

25.    Third-party sellers on Amazon may also sell counterfeit items, or allow counterfeit items to enter the stream of commerce through poor controls, sourcing, and fulfillment practices.

26.    For example, the Department of Homeland Security recently published a report noting that online marketplaces can facilitate the sale of counterfeit goods and that "American consumers shopping on e-commerce platforms and online third-party marketplaces now face a significant risk of purchasing counterfeit or pirated goods."  Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods* (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf, at 7.  The report stated that consumers on online marketplaces cannot rely on traditional "red flag" indicators of counterfeits and "have been surprised to discover that upon completion of an online sales transaction, that the order will be fulfilled by an unknown third-party seller."  *Id.* at 14-15, 38.  To mitigate these problems, the report recommended "[s]ignificantly enhanced vetting of third-party sellers."  *Id.* at 35.

27.    Similarly, the United States Senate Finance Committee recently published a Bipartisan Staff Report on the problems of counterfeit products on online marketplaces, noting that brands "have experienced a steady increase in the amount of infringing products sold online" and that marketplace "business practices" such as commingling inventory contribute to the problem.  *See* Senate Finance Committee, *The Fight Against Fakes* (Nov. 7, 2019), available at: https://www.finance.senate.gov/imo/media/doc/The%20Fight%20Against%20Fakes%20%20(2019-11-07).pdf, at 6-9.

28.    The press has also reported an "epidemic" of counterfeit products being sold on the online marketplaces that diverters are exploiting because they know consumers trust these

marketplaces and think that the products they are buying through these marketplaces are genuine. *See* Bloomberg, *Amazon Gets Real About Fakes* (Nov. 28, 2016), https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes

29.     In its 2018 annual report to its shareholders, in fact, Amazon admitted that third-party sellers on its marketplace are selling products that are "counterfeit," "pirated," "stolen," or otherwise "materially different" from the product that was described to consumers.  Amazon.com, Inc., Annual Report (Form 10-K), at 14 (Jan. 31, 2019), available at https://www.sec.gov/Archives/edgar/data/1018724/000101872419000004/amzn-20181231x10k.htm.  Amazon conceded that these actions are "violating the proprietary rights of others," and warned its investors that Amazon "could be liable for fraudulent or unlawful activities" of Amazon third-party sellers.

30.     Because diverters, like Defendants, undertake great measures to maintain anonymity, manufacturers have no ability to exercise their quality controls over the products sold by the diverters or to ensure that only authentic, high-quality products that come with all of the product benefits are shipped to consumers.  A manufacturer's inability to exercise control over the quality of its products presents serious risks that consumers will receive inauthentic or otherwise poor-quality products and then blame the brand.

31.     Online marketplaces also threaten a manufacturer's ability to maintain its goodwill, reputation, and brand integrity because their construction and user interface obscure the identity of the specific seller and suggests that all sellers are selling the same product when they are not. When purchasing products on an online marketplace, customers cannot easily distinguish between a manufacturer's authorized and unauthorized sellers.  Indeed, on some marketplaces such as Amazon, all sellers of a product are put on the same listing and their identities are inconspicuous.

32.     When a customer purchases a product on an online marketplace and receives a poor-quality product, the customer is much more likely to associate that problem with the brand than the anonymous seller.

33.     Online marketplaces also give disgruntled customers a powerful and convenient forum to air their grievances about problem products—online product reviews.  Any consumer who is dissatisfied with the product received can post a review on the marketplace for all other consumers across the world to see.  These reviews, which are often permanently fixed, will often criticize the brand rather than the marketplace seller that sold the product.

34.     Consumers place extraordinary trust in these online reviews.  Indeed, consumers are over 10 times more likely to rely on product reviews than product descriptions written by manufacturers.  *See* e-Marketer, *Moms Place Trust in Other Consumers* (Feb. 10, 2010), https://www.emarketer.com/Article/Moms-Place-Trust-Other-Consumers/1007509.

35.     Because consumers so heavily "rely on reviews when they're shopping online," the Federal Trade Commission has even begun suing companies that post fake reviews of their products on online marketplaces.  *See* Federal Trade Commission, *FTC Brings First Case Challenging Fake Paid Reviews on an Independent Retail Website* (Feb. 26, 2019), https://www.ftc.gov/news-events/press-releases/2019/02/ftc-brings-first-case-challenging-fake-paid-reviews-independent.

36.     Reviews are especially impactful on online consumers.  In a brick-and-mortar store, a consumer can simply select another product from the shelf if the initial product selected appears to be compromised.  However, online consumers are left simply having to hope that the product that shows up on their doorstep is of appropriate quality.  Therefore, online consumers rely more on brand reputation and reviews.

37.     Because of the reliance consumers place on online reviews, negative online reviews can be the death knell for a manufacturer's brand.  According to one study, merely three negative online reviews will deter a majority (67%) of online consumers from buying a product.  *See* Econsultancy, *How many bad reviews does it take to deter shoppers?*  (Apr. 11, 2011), https://econsultancy.com/blog/7403-how-many-bad-reviews-does-it-take-to-deter-shoppers.

38.     Negative reviews also hurt a brand's placement in search results on Amazon and other search engines, as Amazon's search algorithm downgrades products it believes consumers are less likely to buy.  Thus, poor reviews can create a downward spiral where downgraded search placement leads to reduced sales, which leads to search placement falling further.

### Coravin Has Been the Target of Multiple Negative Online Marketplace Reviews From Customers Who Purchased Products From Unauthorized Sellers

39.     Coravin has been a victim of the issues caused by unauthorized sellers on the online marketplaces.   Indeed, Coravin has received many negative online marketplace reviews from customers who purchased products carrying the Coravin Trademarks from unauthorized sellers.

40.     For example, on January 14, 2018, Amazon user "jeff gustafson" reported that he received a damaged product:  "I haven't been able to use due to the fact the needle came bent☹⬜."



41.     On November 4, 2018, Amazon user "Jeff Thomas" reported that he received an incomplete product:  "Very disappointed, not only $9 for a tiny Co2 capsule, but one didn't even work (was EMPTY!) PLEASE REPLACE ASAP!"



42.     On January 21, 2019, Amazon user "Cyndi White" reported receiving a defective product: "This set of coravin capsules was defective and would not properly fit into my device."



43.     On February 13, 2019, Amazon user "Dakota" reported receiving a defective product: "The canisters bought here do not work.  I have had several shipments and all defective."



44.     On February 14, 2019, Amazon user "G.L." noted the difference in quality of the products received: "The cartridges are different from Amazon and Coravin.  Coravin originals were better than the ones [they] sell in Amazon."



45.     On March 21, 2019, an "Amazon Customer" reported receiving a defective product: "I love my Coravin and the two original canisters worked great and the bottles kept well.  However these were terrible.  If I could give zero stars I would because the one was empty and the other started to expel the wine but was only able to do one glass… not 12-15 like Coravin system promises.  Also, the one bottle that I was able to get wine out of spoiled… very unhappy and won't order again.   Hopefully Coravin sees all these unhappy customer reviews and gets the s*** together.  The system would be worth the money if the replacement cartridges actually did what they promised."



46.     On April 22, 2019, Amazon user "Lisa Mochizuki" questioned the authenticity of the defective products she received: "Empty.  We bought this and a 6 pack.  3 were completely empty.  They feel heavy but complete rip off.  Ones I received from the company have been fine.  Never an issue once.  Fraud?



47.     On May 22, 2019, an "Amazon Customer" reported receiving empty cartridges: "My cartridges were empty.  Thought it was a great deal but, will only purchase directly from

Coravin [from] now on.   The last two orders both failed and my wines were ruined."



48.     On May 30, 2019, Amazon user "Melissa Collins" reported that she repeatedly received poor-quality products:  "We have ordered multiple replacement cartridges for our model 1 Coravin, and continue to have some fit okay, and others that are just slightly too large to completely close the capsule/cartridge cover.  It's so bad that we're afraid we're going to break the Coravin when trying to tighten up the cartridge closure.  Again, with the last cartridge, we couldn't fully close the cartridge cover and all of the gas leaked out of the defective cylinder.  And these things are WAY overpriced for the few bottles of use that you get from a good cartridge, much less a defective one..........."



49.     On August 5, 2019, Amazon user "JD" reported receiving an empty product: "Very disappointing.  We bought the Coravin system with the 2 canisters.  We used the 2 canisters with no problem.  We then ordered the 2 pack canisters and BOTH canisters have NO GAS!  This is totally unacceptable.  Don't waste your money!"



50.     On September 1, 2019, Amazon user "AC1234" reported receiving a defective product, which could not be returned: "These do not work at all.  I bought them and can't return them because they are outside of the return window.  Not sure if they are both duds or what the issue is.  Ugh waste of money."



51.     On September 13, 2019, Amazon user "Daniel Kai Wei Leong" reported that he received a defective product:  "Bought this product on sale and it came as a defective product.  The spring in the trigger was not working at all."



52.     On October 5, 2019, Amazon user "Christine Lund Beukema" reported receiving an empty product, without the ability to return it: "Be sure to test these as soon as they arrive

because I waited and mine were empty and now the window for return has lapsed."



53.     On October 23, 2019, Amazon user "Carley" reported receiving a defective product, without the ability to return it: "I have only used one of the pack of 2 and now that I'm reading other reviews my capsules were not all the way filled.  I was only able to use a capsule one time and the ones that came with my Corsavin [sic] system lasted me several times. Unfortunately I didn't use them in time and cannot return them for a refund.  I feel completely jipped [sic] do not buy these capsules from here."



54.     On November 20, 2019, Amazon user "Elizabeth P." reported that she received a defective product: "defective… last for [less] than 1 glass! really???? What a lousy product as originals lasted for months!!! Do NOT buy!!!"



55.     Upon information and belief, the foregoing complaints were made by consumers in response to products that were purchased from unauthorized sellers of products bearing the Coravin Trademarks, like Defendants.

**Coravin Has Implemented Strict Quality Control Procedures to Combat the Problems Presented by the Online Marketplaces and Protect the Value of the Coravin Trademarks**

56.     Recognizing the health and safety risks to its consumers and the reputational concerns associated with the illegal sale of Coravin Products by unauthorized sellers like Defendants who do not abide by Coravin's quality controls and peddle non-genuine, poor-quality products to unsuspecting consumers, Coravin has implemented a quality control program that applies to both brick-and-mortar retail settings and online sellers with the twin aims of protecting consumers and protecting the value and goodwill associated with the Coravin brand.

57.     The goal of Coravin's quality control program is to ensure that consumers who buy Coravin Products online receive products that feature all of the special characteristics that consumers have come to expect from products sold under the Coravin name--in particular--safety and quality.

58.     The program seeks to minimize the likelihood that poor-quality products will reach consumers.  By preventing consumers from receiving poor-quality products, the program both protects consumers from confusion and unsafe products and also protects the value and goodwill associated with the Coravin brand.

59.     Coravin abides by its quality control requirements and requires its Authorized Resellers to abide by its quality control requirements.

60.     Coravin's ability to exercise its quality controls is essential to the integrity, safety, and quality of Coravin Products, as well as the value of the Coravin Trademarks and other intellectual property.

**Authorized Resellers Are Required to Adhere to Coravin
Quality Control and Customer Service Requirements**

61.     Coravin maintains the quality controls over Coravin Products by selling them exclusively through Authorized Resellers.

62.     Coravin Authorized Resellers are required to sell products only in certain channels, and to abide by Coravin's agreements, policies, and other rules (collectively, the "Coravin Rules").

63.     To prevent third parties from acquiring and reselling Coravin Products, the Coravin Rules allow Authorized Resellers to sell products only to end users.  Authorized Resellers are prohibited from selling Coravin Products to anyone who intends to resell the products.

64.     Authorized Resellers are also prohibited from selling Coravin Products on any third-party marketplaces such as Amazon, eBay, Walmart Marketplace, or Craigslist, without prior written consent of Coravin.

65.     These restrictions allow Coravin to know who its Authorized Resellers are, which ones are selling online, and how to immediately contact them in the event of any product-quality issues.

66.     The Coravin Rules also require Authorized Resellers to adhere to several quality control requirements that specify the manner in which Coravin Products may be handled, marketed, sold, and administered to consumers.

67.     To ensure that customers receive the genuine and high quality products they expect from Coravin, the Coravin Rules require Authorized Resellers to inspect all products for damage, defects, evidence of tampering, and other non-conformance and remove all such products from inventory.  Further, to assist Coravin in identifying any product quality issues, Authorized Resellers are required to report any defects to Coravin.

68.     The Coravin Rules also require that Authorized Resellers store Coravin Products in a cool, dry place, away from direct sunlight, extreme heat, and dampness, and in accordance with

any additional storage guidelines specified by Coravin from time to time. These storage requirements ensure that customers receive quality products that are not damaged.

69. To avoid customer confusion and ensure that customers receive genuine Coravin Products, Authorized Resellers are also prohibited from altering, diluting, tampering with, or repackaging any products, or from removing, obliterating, or tampering with the batch codes or security codes on the products.

70. Coravin also ensures that consumers receive safe products by requiring that Authorized Resellers communicate all safety information to consumers and cooperate with Coravin with respect to any product recall.

71. The Coravin Rules also require that Authorized Resellers provide certain services to their customers. Authorized Resellers must be knowledgeable about all Coravin Products they offer, including the key ingredients and performance. This requirement ensures that Authorized Resellers are able to provide their customers with knowledgeable, professional recommendations on the selection and safe use of Coravin Products.

72. Authorized Resellers must also make themselves available to respond to customer questions and concerns both before and after the sale of Coravin Products and must respond to customer inquiries promptly.

73. Coravin's quality control requirements are legitimate, substantial, and non-pretextual and have been implemented so that Coravin can control the quality of goods manufactured and sold under the Coravin Trademarks, which protects consumers and the value and goodwill associated with the Coravin Trademarks.

74. Coravin's quality control requirements are also material, as they are designed to protect consumers and prevent them from receiving poor-quality products that could harm them.

75. Consumers would find it material and relevant to their purchasing decision to know whether a Coravin product they were considering buying was being sold by an Authorized Reseller who is subject to Coravin's quality control requirements, or whether it is being sold by an

unauthorized seller who is not subject to and does not abide by Coravin's quality controls and over whom Coravin is unable to exercise its quality controls.

**Genuine Coravin Products Come With A Limited Warranty; Defendants' Products Do Not**

76.     Coravin Products purchased from Coravin and Coravin's Authorized Resellers also come with Coravin's Limited Warranty (the "Limited Warranty"). The Limited Warranty provides for repair or replacement of all manufacturer defects for a specified time, depending on the product at issue, from the date that the unit is purchased. For the Limited Warranty to apply, the Coravin Products must have been purchased from Coravin or an Authorized Reseller. *See Coravin Limited Warranty Policy, available at* https://www.coravin.com/warranty-return. Such statements are incorporated herein.

77.     Because products sold by unauthorized sellers are not subject to Coravin's quality control requirements and Coravin cannot ensure the quality of the products sold by unauthorized sellers, the Limited Warranty is not available for Coravin Products sold by unauthorized sellers like Defendants or through unauthorized channels, unless prohibited by law.

78.     Due to the nature of Coravin's unique and highly technical products, consumers purchasing Coravin Products find it material and relevant to their purchasing decisions to know whether the products they are purchasing are covered by the Limited Warranty. If a consumer knows a product does not come with the Limited Warranty, the consumer would be less likely to purchase the product.

### Given the Flood of Poor-Quality Products on the Marketplaces and Consumers' Inability to Inspect Products, Coravin Has Taken Additional Steps to Protect the Quality of Products Sold Online

79.     Given the many unscrupulous sellers like Defendants selling products on the online marketplaces today, Coravin has taken additional steps to prevent the unauthorized sales of its products online and to ensure that Coravin Products purchased on the online marketplaces are subject to and abide by Coravin's quality controls.

80.     Coravin allows Authorized Resellers to sell Coravin Products only on private websites and under storefront names that Coravin has specifically approved.  This requirement allows Coravin to have full visibility into and oversight over Authorized Resellers that are selling its products online.

81.     Knowing which of its Authorized Resellers are approved to sell online is critical to Coravin's ability to exercise its quality controls over its products sold online.  Having this information allows Coravin to monitor its Authorized Resellers that are selling online and to immediately address any quality issues or negative reviews that arise.  Coravin is unable to address quality issues that arise with unauthorized sellers like Defendants who sell products anonymously.

82.     Coravin also vets its Authorized Resellers before approving them to sell online or on the online marketplaces to ensure that they meet Coravin's criteria and will properly represent the Coravin brand.

83.     Before approving an Authorized Reseller to sell online or on the online marketplaces, Coravin verifies that the Authorized Reseller has:  (i) an appropriately registered and recognized business that meets applicable criteria (*i.e.* credit, sales history, facility requirements); (ii) an acceptable online review history, without a significant presence of negative product or seller reviews; and (iii) an acceptable business operating record, which includes evaluating, among other things, any lawsuits, complaints, or actions related to the delivery of damaged products, misrepresented products, poor-quality products, or other similar issues.

## Defendants Are Not Authorized Resellers and Are Illegally Selling Products Bearing the Coravin Trademarks

84.     Due to the health and safety risks to customers and reputational concerns associated with the illegal sale of Coravin Products by unauthorized Internet sellers, Coravin monitors the sale of Coravin Products online.

85.     Through these efforts, Coravin discovered Coravin Products being illegally sold by Defendants on Amazon under the Storefront.

86.     Defendants are not Authorized Resellers of Coravin Products and do not comply with Coravin's Authorized Reseller requirements or the Coravin Rules.

87.     Coravin has not approved Defendants to sell products bearing the Coravin Trademarks online.

88.     Despite not being approved as an Authorized Reseller, Defendants have sold, and continue to sell, products bearing the Coravin Trademarks on the Storefront.

89.     Upon information and belief, Defendants, through Amazon, accept and fulfill orders from Massachusetts residents for Coravin Products and ship Coravin Products to persons located in Massachusetts.

### Defendants Do Not Abide by Coravin's Quality Controls and Customer Service Requirements

90.     Defendants do not abide by Coravin's quality control measures that are imposed upon genuine Coravin Products.

91.     Defendants do not comply with Coravin's quality control requirements because they have not provided Coravin their business information and sell products on the Storefront anonymously.  Instead, Defendants take efforts to maintain their anonymity and prevent anyone from contacting them regarding their business and the shady, poor-quality products they sell to unwitting consumers.  Defendants' concerted efforts at maintaining anonymity prevents Coravin from addressing any quality control issues or negative reviews that arise out of Defendants' sale of products bearing the Coravin Trademarks.

92.     Defendants also do not comply with Coravin's quality control requirements because they have not disclosed to Coravin where they acquire products that bear the Coravin Trademarks.  Defendants' failure to provide such information prevents Coravin from determining if any products Defendants are selling or have sold are subject to a recall or consumer safety information effort.

93.     Defendants do not comply with Coravin's quality control inspection requirements because they do not inspect the products they sell for damage, defects, evidence of tampering, and other non-conformance and remove all such products from inventory.  Instead, upon information and belief, they sell products bearing the Coravin Trademarks that are damaged, defective, and that have been tampered with.

94.     Defendants do not comply with Coravin's quality control storage requirements and, upon information and belief, do not store their products in accordance with the storage guidelines specified by Coravin.

95.     Defendants do not comply with Coravin's quality control requirements related to the handling, packaging, and shipping of products because they sell products bearing the Coravin Trademarks that have been tampered with.

96.     Defendants also do not comply with Coravin's customer service requirements because they are not qualified or trained to accurately describe, demonstrate, and sell the products in their inventory and to advise customers on how to use Coravin Products safely and properly.

97.     Defendants also do not comply with Coravin's customer service requirements because they do not, and are unable to, provide the advice to consumers that Coravin requires of its Authorized Resellers and do not provide the type of ongoing support and response to consumer inquiries that Coravin requires of its Authorized Resellers.

98.     Defendants' failure to abide by these quality controls interferes with Coravin's quality controls and prevents Coravin from exercising control over the quality of products Defendants sell bearing the Coravin Trademarks.  Coravin is unable to audit Defendants to ensure they are complying with Coravin's quality controls and/or close their account if they fail to comply with Coravin's quality control requirements.

99.     Defendants' failure to comply with these quality controls also interferes with Coravin's quality controls because it prevents Coravin from being able to obtain Defendants'

assistance with any recall or consumer safety information efforts that may arise related to any products they are selling or have sold in the past.

### Defendants Are Infringing on the Coravin Trademarks by Selling Products Bearing the Coravin Trademarks That Are Not Subject to, Do Not Abide by, and Interfere With Coravin's Quality Controls and Customer Service Requirements

100.     For all of the reasons set forth above, the products Defendants sell bearing the Coravin Trademarks fail to adhere to the extensive and legitimate quality controls that Coravin exercises over products bearing the Coravin Trademarks to protect consumers and its brand goodwill.

101.     The products sold by Defendants are not subject to, do not abide by, and interfere with Coravin's quality controls and customer service requirements.

102.     Because the products Defendants sell are not subject to, do not abide by, and interfere with Coravin's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Coravin Products.

103.     Because the products Defendants sell are not subject to, do not abide by, and interfere with Coravin's quality controls and customer service requirements, the products Defendants sell are not genuine Coravin Products.

104.     Defendants' unauthorized sale of products bearing the Coravin Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine Coravin Products, when in fact they are not.

105.     Defendants' unauthorized sale of products bearing the Coravin Trademarks infringes on the Coravin Trademarks and diminishes their value.

106.     Despite these facts, Defendants have sold, and continue to sell, products bearing the Coravin Trademarks through their Amazon Storefront without Coravin's consent.

**Defendants Are Infringing on the Coravin Trademarks by Selling Products Bearing the Coravin Trademark That Do Not Come With the Limited Warranty**

107.    As set forth above, genuine Coravin products purchased from Coravin and its Authorized Resellers that comply with Coravin's quality controls come with the Limited Warranty.

108.    Because Defendants are not Authorized Resellers of Coravin products and do not comply with Coravin's quality controls, the products they sell bearing the Coravin Trademarks do not come with the Limited Warranty.

109.    Because the products Defendants sell do not come with the Limited Warranty, they are materially different from genuine Coravin products.

110.    Defendants' unauthorized sale of products bearing the Coravin Trademarks is likely to, and does, create customer confusion because customers who purchase Coravin products from Defendants believe they are purchasing genuine Coravin products that come with the Limited Warranty when, in fact, they do not.

111.    Defendants' unauthorized sale of products bearing the Coravin Trademarks infringes on the Coravin Trademarks and diminishes their value.

112.    Despite these facts, Defendants have sold, and continue to sell, products bearing the Coravin Trademarks through their Amazon Storefront without Coravin's consent.

**Defendants Are Engaging in False Advertising by Falsely Representing That the Products They Sell Come With the Limited Warranty and Are in Violation of Amazon's Policies**

113.    When sellers list items on Amazon, Amazon requires the seller to identify the condition of the product for sale as one of the following:  "New"; "Renewed"; "Used – Like New or Open Box"; "Used – Very Good"; "Used – Good"; or "Used – Acceptable."  *See* https://sellercentral.amazon.com/gp/help/external/200339950

114.    Pursuant to Amazon's policies, a "New" product listing comes with the "original manufacturer's warranty":

**New:**

Just like it sounds. A brand-new item. ==Original manufacturer's warranty, if any, still applies, with warranty details included in the listing comments.== Original packaging is present for most New items but certain items like shoes may be re-boxed.

https://sellercentral.amazon.com/gp/help/external/200339950?language=en_US&ref=efph_2003 39950_cont_521

115.    While the products Defendants are selling do not come with the Limited Warranty – as would be required to list the items as "new" – Defendants are nonetheless falsely advertising that the products they sell as "New."

116.    Thus, by representing to consumers that the products they sell are "New" and come with the Limited Warranty, Defendants are falsely advertising the products they are selling.

117.    Defendants' decision to falsely advertise the products as "New" is not inadvertent, as evidenced by its other deceptive sales strategies.

118.    For example, on or around January 27, Defendants attempted to purchase ***five hundred and twelve*** units of Coravin products from a retailer offering a "Friends and Family" discount.  Upon information and belief, based on this enormous quantity, Defendants intended to resell the items on Amazon without disclosing to consumers that the items would not come with the Limited Warranty.

119.    As described in more detail below, when Defendants' illegal sales were discovered, Defendants attempted to avoid detection by changing their storefront name.

**Coravin Has Repeatedly Attempted to Stop Defendants' Illegal Sale of Products
Bearing the Coravin Trademarks but Defendants Continue to
Willfully Infringe on the Coravin Trademarks**

120.    Coravin polices the sale of its products online.  In the course of monitoring online listings of Coravin products, Coravin discovered products bearing the Coravin Trademarks being illegally sold by Defendants on Amazon under the storefront name "AMZTECH" in or around December 2019.  Upon information and belief, Defendants changed the name of the Storefront to "ROMANS828" to attempt to avoid detection.

121.   In total, Coravin estimates that the Storefront sold ***over 700 units*** of Coravin products.  To-date, Coravin estimates the Storefront has a total 30-day revenue of approximately $140,000.

122.   After Coravin discovered products bearing the Coravin Trademarks being illegally sold on the Amazon storefront, Coravin investigated the storefront to determine who was operating the storefront.

123.   Because Defendants do not disclose their business or contact information on their storefront and sell products through the storefront anonymously, Coravin had to spend significant time and money investigating the storefront to attempt to identify the real identity of the business and people operating it.

124.   After conducting an investigation, Coravin identified Defendants as the owners and operators of the "AMZTECH" storefront.

125.   Coravin sent Defendants a cease-and-desist letter on or about January 29, 2020, demanding that they stop selling Coravin Products and remove all Coravin Products from their Amazon storefront and any other unauthorized websites.

126.   This letter further notified Defendants that they were injuring Coravin in Massachusetts through their illegal actions and that they would be subject to personal jurisdiction in Massachusetts if they continued to engage in their conduct.

127.   This letter also notified Defendants that Coravin had contracts with its Authorized Resellers that prohibited sale to resellers and that Defendants would be tortiously interfering with those contracts if they continued to purchase products bearing Coravin's Trademarks from Authorized Resellers for resale.

128.   Just a few days later, Defendants changed their storefront name to "ROMANS828" to avoid detection.  Unfortunately for Defendants, changing the storefront name does not change the unique Amazon Merchant ID assigned to each seller, so Coravin was able to easily identify Defendants' failed detection strategy.

129.    Defendants did not respond to this letter and continued to sell products bearing the Coravin Trademarks on the now-named ROMANS828 storefront.

130.    Hearing nothing from Defendants, Coravin sent them a second letter on or about February 6, 2020.

131.    Defendants ignored both letters and continue to sell Coravin Products.

132.    As a result, Defendants have misled, and continue to mislead, consumers into believing they are purchasing genuine Coravin Products when, in fact, they are not.

**Defendants Are Tortiously Interfering With Coravin's Agreements
With Its Authorized Resellers**

133.    Upon information and belief, Defendants have purchased Coravin Products from Coravin's Authorized Resellers for purposes of reselling them on the Internet.

134.    The Coravin Rules prohibit Coravin's Authorized Resellers from selling Coravin Products to third parties who intend to resell the products.

135.    Defendants were informed of this prohibition by at least January 2020.  Indeed, the cease-and-desist letter Coravin sent Defendants on January 29, 2020 informed Defendants that Coravin restricts the manner in which Authorized Resellers may sell Coravin Products, and that Authorized Resellers may sell Coravin Products only to end-user customers through authorized channels and are specifically prohibited from selling products to resellers or any person or entity they know or have reason to know intends to resell the products.

136.    Defendants were also informed that by purchasing Coravin Products from an Authorized Reseller for purposes of resale, they were causing a breach of the agreement between Coravin and its Authorized Reseller and interfering with Coravin's agreements and business relationships.

137.    Defendants were also advised that if they continued to acquire Coravin Products from Coravin's Authorized Resellers for purposes of resale, they would be liable for tortiously interfering with Coravin's contracts and/or business relationships.

138.    Despite being provided this information, Defendants have continued to acquire Coravin Products from Coravin's Authorized Resellers.  Indeed, Coravin's internet monitoring software indicates that Defendants presently have in their possession nearly 100 Coravin units.

139.    Upon information and belief, Defendants willfully and knowingly induced unknown Authorized Resellers to breach their agreements with Coravin so that they could acquire Coravin Products and resell them.

**Coravin Has Suffered Significant Harm as A Result of Defendants' Conduct**

140.    As set forth above, the unauthorized sale of products bearing the Coravin Trademarks through unauthorized sellers, such as Defendants, has caused significant harm to the Coravin brand.

141.    When a consumer receives a non-genuine, poor-quality, defective, or tampered-with product from Defendants, the consumer associates that negative experience with Coravin. Defendants' ongoing sale of unauthorized products bearing the Coravin Trademarks harms the Coravin brand.

142.    Coravin has suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions including, but not limited to, loss of sales, damage to its intellectual property, and damage to its existing and potential business relations.

143.    Coravin has suffered, and will continue to suffer, irreparable harm as a result of Defendants' actions, including, but not limited to, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

144.    Coravin is entitled to injunctive relief because, unless enjoined by this Court, Defendants will continue to unlawfully sell Coravin Products, causing continued irreparable harm to Coravin's reputation, goodwill, relationships, intellectual property, and brand integrity.

145.    Defendants' conduct was and is knowing, intentional, willful, malicious, wanton, and contrary to law.

146.    Defendants' willful violations of the Coravin Trademarks and continued pattern of misconduct demonstrate intent to harm Coravin.

## FIRST CAUSE OF ACTION
### Trademark Infringement
### 15 U.S.C. § 1114

147.    Coravin hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

148.    Defendants willfully and knowingly used, and continue to use, the Coravin Trademarks in commerce for purposes of selling non-genuine products bearing the Coravin Trademarks on the Internet without Coravin's consent.

149.    The products Defendants sell bearing the Coravin Trademarks are not authorized for sale by Coravin.

150.    The products Defendants sell bearing the Coravin Trademarks are materially different from genuine Coravin products because they are not subject to, do not abide by, and interfere with the legitimate and substantial quality controls that Coravin has established.

151.    The products Defendants sell bearing the Coravin Trademarks are materially different from genuine Coravin products because they do not come with the Coravin Warranty, which accompanies genuine Coravin products.

152.    Defendants' unauthorized sale of materially different products bearing the Coravin Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine Coravin products when they are not.

153.    Defendants' unauthorized sale of materially different products bearing the Coravin Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with Coravin when, in fact, they are not.

154.    Defendants' unauthorized use of the Coravin Trademarks has infringed upon and materially damaged the value of the Coravin Trademarks, and caused significant damage to Coravin's business relationships.

155.    As a proximate result of Defendants' actions, Coravin has suffered, and will continue to suffer immediate and irreparable harm.  Coravin has also suffered, and continues to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

156.    Coravin is entitled to recover its damages caused by Defendants' infringement of the Coravin Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

157.    Coravin is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Coravin will suffer irreparable harm.

158.    Coravin is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Coravin Trademarks.

### SECOND CAUSE OF ACTION
**False Advertising**
**15 U.S.C. § 1125(a)(1)(B)**

159.    Coravin hereby incorporates the allegations contained in the foregoing Paragraphs as if fully set forth herein.

160.    As set forth above, in their listings on the Internet, including but not limited to Amazon.com, Defendants willfully and knowingly used, and continue to use, the Coravin Trademarks in interstate commerce for purposes of advertising, promoting, and selling Coravin Products without Coravin's consent.

161.    Defendants' advertisements and promotions of their products unlawfully using the Coravin Trademarks have been disseminated to the relevant purchasing public.

162.    As discussed above, Amazon requires sellers to identify the condition of products they sell.  Classifying a product as "New" on Amazon means that the product comes with the applicable warranties.

163.    Defendants falsely advertise that the products they sell bearing the Coravin Trademarks are "New" and come with the Limited Warranty.

164.    This representation is false because the products Defendants sell bearing the Coravin Trademarks do not come with the Limited Warranty.

165.    Therefore, Defendants' use of the Coravin Trademarks in connection with the unauthorized advertising, promotion, and sale of products misrepresents the nature, characteristics, qualities, and origin of the products.

166.    As a proximate result of Defendants' actions, Coravin has suffered, and will continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

167.    Coravin is entitled to recover their damages caused by Defendants' infringement of the Coravin Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

168.    Coravin is entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Coravin will suffer irreparable harm.

169.    Coravin is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Coravin Trademarks.

## THIRD CAUSE OF ACTION
### Unfair and Deceptive Trade Practices
### Mass. Gen. Laws ch. 93A, §§ 1-11

170.    Coravin hereby incorporates the allegations contained in the foregoing Paragraphs as if fully set forth herein.

171.    Coravin products are sold and purchased through its Authorized Resellers throughout the United States, including Massachusetts.

172.    Defendants willfully and knowingly advertise, promote, and sell Coravin products in interstate commerce on the Internet and in Massachusetts without the consent of Coravin.

173.    The products Defendants advertise, promote, and sell are not authorized for sale by Coravin.

174.    The products sold by Defendants are not, in fact, genuine Coravin Products.  The products sold by Defendants are materially different because, among other reasons, they are ineligible for the Limited Warranty and are not subject to and do not abide by Coravin's quality control program.

175.    The Limited Warranty is material, as consumers purchasing Coravin products would find it relevant to their purchasing decision to know whether the product they are purchasing is covered by the Limited Warranty.

176.    Coravin has established and implemented legitimate and substantial quality control procedures that genuine Coravin products must comply with.

177.    Coravin abides by these quality control procedures and requires all of its Authorized Resellers to abide by these quality controls.

178.    Coravin's quality controls are material, as they protect consumers and prevent them from receiving poor-quality products that could harm them.

179.    The products Defendants advertise, promote, and sell are not subject to, do not abide by, and interfere with Coravin's quality controls and customer service requirements.

180.    Because the products Defendants advertise, promote, and sell are not subject to, do not abide by, and interfere with Coravin's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Coravin products.

181.    Because the products Defendants advertise, promote, and sell are not subject to, do not abide by, and interfere with Coravin's quality controls and customer service requirements, the products Defendants sell are not genuine Coravin products.

182.    Defendants' unauthorized advertising, promotion, and sale of products bearing the Coravin Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products Defendants offer for sale come with the Limited Warranty and customer service benefits that accompany genuine Coravin products when, in fact, they do not.

183.    Defendants' unauthorized advertising, promotion, and sale of products bearing the Coravin Trademarks is material and likely to influence customers to purchase the products they sell, as consumers are likely to believe that the products Defendants advertise are pure genuine Coravin products that are subject to Coravin's quality controls requirement and come with the Limited Warranty and other benefits associated with authentic Coravin products when, in fact, they do not.

184.    Defendants' unauthorized advertising, promotion, and sale of products bearing the Coravin Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with Coravin when in fact they are not.

185.    Defendants' unauthorized sale of products bearing the Coravin Trademarks is likely to cause confusion, mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine Coravin Products when in fact they are not.

186.    Defendants' unauthorized sale of products bearing the Coravin Trademarks is likely to cause confusion, mistake, or deceive consumers because it suggests that the products Defendants

offer for sale are sponsored, authorized, or otherwise connected with Coravin when, in fact, they are not.

187.     Defendants' unauthorized use of the Coravin Trademarks in connection with the unauthorized advertising, promotion, and sale of Coravin products constitutes unfair and deceptive trade practices under Mass. Gen. Laws ch. 93A, §§ 1-11.

188.     Defendants' unlawful actions and unauthorized use of the Coravin Trademarks has materially damaged the value of the Coravin Trademarks, caused significant damage to Coravin's business relations, and infringed on the Coravin Trademarks.

189.     As a proximate result of Defendants' actions, Coravin has suffered, and will continue to suffer, immediate and irreparable harm, as well as great damage, including to its business, goodwill, reputation, and profits in an amount to be proven at trial.

190.     Pursuant to Mass. Gen. Laws ch. 93A, §§ 1-11, Coravin is entitled to injunctive relief enjoining Defendants' conduct.

191.     Pursuant to Mass. Gen. Laws ch. 93A, §§ 1-11, Coravin is entitled to an award of double or treble damages, costs and attorneys' fees.

192.     Coravin is also entitled to punitive damages because Defendants acted maliciously toward Coravin or in an intentional disregard of the rights of Coravin.

## FOURTH CAUSE OF ACTION
### Common Law Unfair Competition

193.     Coravin hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

194.     Defendants' unauthorized advertisement and sale of non-genuine products bearing the Coravin Trademarks interferes with Coravin's quality controls and its ability to exercise quality control over products bearing the Coravin Trademarks.

195.     Defendants' unauthorized advertisement and sale of non-genuine products bearing the Coravin Trademarks is likely to cause confusion, cause mistake, or deceive consumers because

Defendants' use of the Coravin Trademarks suggests that the products Defendants offer for sale are subject to, and abide by, Coravin's quality controls when, in fact, they are not.

196.     Defendants' unauthorized advertisement and sale of non-genuine products bearing the Coravin Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the Coravin Trademarks suggests that the products Defendants offer for sale are genuine Coravin products with the Limited Warranty when, in fact, they are not.

197.     Defendants' unauthorized advertisement and sale of non-genuine products bearing the Coravin Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the Coravin Trademarks suggests that the products Defendants offer for sale are sponsored by, authorized by, or otherwise connected with Coravin when, in fact, they are not.

198.     Defendants' unlawful actions constitute active misrepresentation as to the source of the products they sell.  These false representations tend to confuse customers and induce them to believe that Defendants' products are genuine Coravin products when, in fact, they are not.

199.     Defendants' unauthorized sale of products bearing the Coravin Trademarks and unauthorized use of the Coravin Trademarks in advertising infringes the Coravin Trademarks and constitutes unfair competition at common law.

200.     Defendants' unauthorized use of the Coravin Trademarks has materially damaged the value of the Coravin Trademarks, caused significant damage to Coravin's business relations, and infringed the Coravin Trademarks.

201.     As a result, Coravin has suffered, and continues to suffer, immediate and irreparable harm.  Coravin has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

202.     Coravin is also entitled to punitive damages because Defendants acted with actual malice accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by their acts and omissions.

## FIFTH CAUSE OF ACTION
### Tortious Interference With Contractual Relations

203.    Coravin hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

204.    Coravin has contracts and business relationships with its Authorized Resellers, who sell Coravin products.  These contracts prohibit Coravin's Authorized Resellers from selling to unauthorized resellers such as Defendants for purposes of resale.

205.    Defendants are not Authorized Resellers of Coravin products.

206.    Defendants have sold—and continue to sell—a high volume of products bearing the Coravin Trademarks through their Amazon storefront.

207.    Coravin has not itself sold any Coravin products to Defendants.

208.    Based on these facts, it is plausible and a reasonable inference that Defendants acquired the products they are reselling from one or more of Coravin's Authorized Resellers.

209.    Defendants knew since (at the latest) receiving Coravin's November 2019 cease-and-desist letter that Coravin had agreements with these Authorized Resellers that prohibited unauthorized online sales and sales to resellers, and that Defendants would be tortiously interfering with those agreements if they continued to acquire products from Authorized Resellers for resale.

210.    Defendants, without legal right, privilege, or justification, intentionally interfered with the contracts and business relationships between Coravin and its Authorized Resellers by purchasing products from Authorized Resellers for the purpose of reselling products on the Internet in violation of the Authorized Resellers' contracts with Coravin.

211.    Upon information and belief, Defendants interfered with Coravin's contracts with its Authorized Resellers through wrongful means, namely concealing and failing to disclose their intention to resell the products even after being informed that this intention would mean that Authorized Resellers would be breaching their agreements with Coravin by selling to Defendants.

212.    Because Defendants have refused to disclose how they have obtained the products bearing the Coravin Trademarks they have resold, Coravin must take discovery in this action to learn the specific identities of the Authorized Resellers that sold products to Defendants. Defendants, however, know the sources of the Coravin products they have obtained and the basis for Coravin's claim of tortious interference.  Coravin's agreements with its Authorized Resellers are a specific class of contract that Defendants caused Authorized Resellers to breach when they purchased products from Authorized Resellers for resale.

213.    Defendants' actions have caused injury to Coravin for which Coravin is entitled to compensatory damages in an amount to be proven at trial.

214.    The injury to Coravin is immediate and irreparable, as Coravin's reputation and relationships have been damaged among both its consumers and Authorized Resellers.

215.    Coravin is also entitled to punitive damages because Defendants acted with actual malice and accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by their acts and omissions.

## PRAYER FOR RELIEF

WHEREFORE, Coravin prays for relief and judgment as follows:

A.    Judgment in favor of Coravin and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, liquidated damages, restitution, including disgorgement of profits, and pre-judgment and post-judgment interest, as permitted by law;

B.    Preliminary and permanent injunctions enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i)       Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all products bearing the Coravin Trademarks;

ii)      Prohibiting the Enjoined Parties from using any of the Coravin Trademarks in any manner, including advertising on the Internet;

iii)     Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all products bearing any of the Coravin Trademarks;

iv)     Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Coravin Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

v)      Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of Coravin's products, or any of the Coravin Trademarks;

vi)     Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo, and Bing), to remove from the Internet any of the Coravin Trademarks which associate Coravin's products or the Coravin Trademarks with the Enjoined Parties or the Enjoined Parties' websites; and

vii)    Requiring the Enjoined Parties to take all action to remove the Coravin Trademarks from the Internet, including from the website www.amazon.com.

C.     An award of attorneys' fees, costs, and expenses.

D.     Such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Coravin demands a trial by jury on all issues and on all counts so triable.

Respectfully submitted,

Plaintiff,
Coravin, Inc.,

/s/Marie E. Chafe
Marie E. Chafe    BBO#:  556632
   mchafe@cornellgollub.com
CORNELL & GOLLUB
88 Broad Street, 6th Floor
Boston, MA  02110
(617) 482-8100
(617) 482-3917 facsimile

Date: February 12, 2020

Additional Counsel:
William D. Kloss Jr. (Ohio Bar 0040854)
Martha Brewer Motley (Ohio Bar 0083788)
(*pro hac vice* applications forthcoming)
Vorys, Sater, Seymour and Pease LLP
52 E. Gay Street
P.O. Box 1008
Columbus, OH  43216-1008
Phone:  (614) 464-6400
Fax:  (614) 719-6350
Email:  wdklossjr@vorys.com
Email:  mbmotley@vorys.com